UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JUANITA HART, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:13-cv-00094-JMS-DML |
| | ) | |
| FORGE INDUSTRIAL STAFFING INC., | ) | |
| Defendant. | ) | |

**ORDER**

Plaintiff Juanita Hart brings this Title VII suit against her former employer, Defendant

Forge Industrial Staffing Inc. ("Forge"). [Filing No. 10.] Currently pending before the Court is

Forge's Motion for Summary Judgment. [Filing No. 52.]

**I.**
**STANDARD OF REVIEW**

A motion for summary judgment asks that the Court find that a trial based on the

uncontroverted and admissible evidence is unnecessary because, as a matter of law, it would

conclude in the moving party's favor. *See* Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986). As the current version of Rule 56 makes clear, whether a party asserts that

a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to

particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P.

56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish

the absence or presence of a genuine dispute or that the adverse party cannot produce admissible

evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be

made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly

support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

**A.     Procedural Background**

Before outlining the factual background, the Court addresses two issues regarding Ms. Hart's briefing and compliance with the Federal and Local Rules.  Forge maintains that Ms. Hart's response brief in opposition to Forge's Motion for Summary Judgment failed to comply with the Local Rules.  [Filing No. 64, at ECF p. 3.]  Because of these alleged deficiencies, Forge argues that its version of the facts should be deemed admitted, and Ms. Hart's version of the facts should be stricken to the extent those facts are not supported by citations to admissible evidence.  [Filing No. 64, at ECF pp. 3-5.]  For the reasons below, the Court deems Forge's version of the facts admitted and strikes Ms. Hart's version of the facts to the extent they are not supported by admissible evidence.

*1.     Ms. Hart's Failure to Include a "Statement of Material Facts in Dispute" Section*

A party opposing a summary judgment motion "must include a section labeled 'Statement of Material Facts in Dispute' that identifies the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."  Local Rule 56-1(b).  The consequence of such a failure is that Ms. Hart concedes Forge's version of events.  *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *see also Wackett v. City of Beaver Dam*, 642 F.3d 578, 582 n.1 (7th Cir. 2011).  The Court continues to apply the same summary judgment standard, but Ms. Hart's failure to comply with the Local Rules in this respect "reduc[es] the pool" from which the facts and inferences may be drawn.

*Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).  Forge's uncontroverted facts are deemed admitted.

2.    *Ms. Hart's Failure to Support Her Factual Assertions*

Ms. Hart rarely points to record evidence to support her factual assertions, as required by Federal Rule of Civil Procedure 56(c)(1).  *See also* Local Rule 56-1(e) ("A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence").  This additional failure to comply with Rule 56 and its local counterpart reduces the pool of facts even further.  For example, Ms. Hart claims that her supervisor did not request any documentation from her after her termination to prove that her license had been reinstated.  [Filing No. 60-1, at ECF p. 3.]  Yet, Ms. Hart fails to support this assertion with any citation to a deposition or affidavit.  [Filing No. 60-1, at ECF p. 3.]  And, even when Ms. Hart attempts to cite relevant evidence to support her factual assertions, the evidence cited often does not support the assertion made.  For example, Ms. Hart claims that her supervisor did not follow Forge's No-Harassment Policy, citing her own deposition testimony.  [Filing No. 60-1, at ECF p. 2.]  But Ms. Hart's testimony only shows that she has no knowledge of whether Mr. Keene followed Forge's No-Harassment Policy.  [Filing No. 53-4, at ECF p. 35.]  Ms. Hart's unsupported facts are stricken.

These briefing practices are not appropriate.  They are detrimental to both Ms. Hart's case and the Court's decisional process.  There are consequences resulting from these failures.  In deciding Forge's Motion for Summary Judgment, the Court will only consider Ms. Hart's factual assertions that are supported by citations to record evidence that include the page or paragraph number or otherwise sufficiently direct the Court to the place in the cited documents that supports the factual assertion in accordance with Federal Rule of Civil Procedure 56(c) and

Local Rule 56-1(e). Therefore, in setting forth the relevant factual background below, the Court provides a brief overview of the facts necessary to understand Ms. Hart's claim as derived from the undisputed evidence—much of which is Forge's evidence that Ms. Hart conceded as true by failing to file the "Statement of Material Facts in Dispute" section. *See* Local Rule 56-1(b); *Smith*, 321 F.3d at 683.

### B. Factual Background

#### 1. Forge Hires Ms. Hart

Forge is a staffing agency that employs temporary workers to provide staffing solutions for industrial workplaces. [Filing No. 53-3, at ECF p. 2.] On August 30, 2011, Ms. Hart applied for a position with Forge. [Filing No. 53-2, at ECF p. 3.] She was then contacted by Forge's Manager of Operation, Nick Keene. [Filing No. 53-2, at ECF p. 2; Filing No. 53-4, at ECF p. 9.] Mr. Keene thought Ms. Hart was a good candidate for the Service Coordinator position – an administrative position within Forge. [Filing No. 53-2, at ECF p. 3.] Mr. Keene informed Ms. Hart that the Service Coordinator position was a permanent position, not a temporary one. [Filing No. 53-4, at ECF p. 9.]

A Service Coordinator is required to "travel to client sites to develop client relationships and monitor temporary employees staffed at clients." [Filing No. 53-2, at ECF p. 2.] During Ms. Hart's interview on August 30, 2011, Mr. Keene explained the duties of the position, including that it required her to have a valid driver's license. [Filing No. 53-2, at ECF p. 2.] Ms. Hart informed Mr. Keene that her driver's license had been suspended, and Mr. Keene offered to hire Ms. Hart on the condition that she obtain her driver's license within ninety days (or by November 3, 2011), and informed her that her employment would be terminated if she failed to obtain her driver's license within that time. [Filing No. 53-2, at ECF p. 3; Filing No. 53-4, at

ECF p. 10.]  Ms. Hart accepted the offer, [Filing No. 53-4, at ECF p. 10], signing an at-will employment contract as a Part Time Service Coordinator, [Filing No. 53-5, at ECF p. 2].

2.      *Ms. Hart's Efforts to Reinstate Her Driver's License*

On September 1, 2011, Mr. Keene reiterated to Ms. Hart the importance of reinstating her license as soon as possible.  [Filing No. 53-4, at ECF p. 3.]  Additionally, Mr. Keene directed Ms. Hart to the Indiana Bureau of Motor Vehicles ("BMV") website, and assisted her with setting up a login and profile.  [Filing No. 53-4, at ECF p. 3.]  On September 5, 2011, Mr. Keene permitted Ms. Hart to leave work so that she could go to traffic court and obtain her license. [Filing No. 53-4, at ECF p. 3.]  Ms. Hart learned that to reinstate her license she had to complete the driver-safety program and pay all outstanding fines before a court date set for October 12, 2011.  [Filing No. 53-4, at ECF p. 18.]  To aid Ms. Hart, Mr. Keene prepared a letter to the BMV, explaining the license requirement for her job.  [Filing No. 53-2, at ECF p. 4; Filing No. 60-11, at ECF p. 2.]

On October 10 and October 12, 2011, Mr. Keene allowed Ms. Hart to leave work to continue the process of having her license reinstated.  [Filing No. 53-2, at ECF p. 4.]  On October 13, 2011, Ms. Hart informed Mr. Keene that the BMV had not reinstated her driver's license because, although she had completed the driver-safety program, [Filing No. 53-7, at ECF p. 7], she had failed to pay all outstanding fines, [Filing No. 53-4, at ECF p. 19].  Ms. Hart advised Mr. Keene that she needed to appear in court for another hearing on December 7, 2011. [Filing No. 53-2, at ECF p. 4.]  This date fell outside of Ms. Hart's ninety-day conditional window in which she needed to have her license reinstated.  [Filing No. 53-2, at ECF p. 4.]

### 3. *Ms. Hart's Interactions with Mr. Wilson*

Immediately upon her employment at Forge, Ms. Hart began training with another Forge Service Coordinator, Spencer Wilson. [Filing No. 53-4, at ECF p. 10.] Mr. Wilson was not Ms. Hart's supervisor and could not hire, fire, or discipline her or other employees. [Filing No. 53-2, at ECF p. 5.] Initially, Ms. Hart and Mr. Wilson worked well together. [Filing No. 53-4, at ECF p. 21.] Mr. Wilson was a "good trainer," who was "compliment[ary]." [Filing No. 53-4, at ECF p. 21.] Eventually, however, Mr. Wilson became more than complimentary. [Filing No. 53-4, at ECF p. 22.] In person, and over a period of a few weeks, Mr. Wilson told Ms. Hart: "You look nice," "Your a** looks good today," "I want to f*** you," and "Why do you have a tongue ring?" [Filing No. 53-4, at ECF pp. 22-23.]

In September 2011, Ms. Hart and Mr. Wilson exchanged numerous text messages. [Filing No. 53-9.] Mr. Wilson texted to Ms. Hart: "U a hot momma!!," "[U] look good today," and "[W]hy the tongue piercing?" [Filing No. 53-9, at ECF pp. 2-3.] For her part, Ms. Hart texted to Mr. Wilson: "Who else have u compl[i]mented lol," "Have u ever dated a Blk girl,"[1] and "You coo I would like to get to no u." [Filing No. 53-9, at ECF p. 2.] Ms. Hart testified that she felt that Mr. Wilson's text messages, coupled with his face-to-face comments, were lewd, degrading, and uncomfortable. [Filing No. 53-4, at ECF pp. 22-23.] Ms. Hart sternly asked Mr. Wilson to stop. [Filing No. 53-4, at ECF p. 23.]

On September 20, 2011, Ms. Hart reported Mr. Wilson's comments and text messages to Mr. Keene. [Filing No. 53-2, at ECF p. 5.] Ms. Hart showed Mr. Keene the text messages from Mr. Wilson, [Filing No. 53-4, at ECF p. 25], and complained that Mr. Wilson was "singling her

---

[1] Ms. Hart is African American, [Filing No. 60-1, at ECF p. 1], but is not asserting any claims based on racial discrimination in this lawsuit.

out during training for mistakes," [Filing No. 53-2, at ECF p. 5].  Mr. Keene told Ms. Hart that the text messages were inappropriate, that she should not have to feel that way at work, that he would meet with Human Resources, and that a meeting between all of the parties would occur. [Filing No. 53-4, at ECF p. 25.]  Ms. Hart, Mr. Keene, and Mr. Wilson met to discuss the situation.  [Filing No. 53-4, at ECF pp. 25-26.]

On September 21, 2011, Mr. Keene and Mr. Wilson met privately.  [Filing No. 53-2, at ECF p. 6.]  Mr. Keene informed Mr. Wilson that sending inappropriate text messages to another employee was unacceptable, and that such conduct was grounds for termination.  [Filing No. 53-2, at ECF p. 6.]  Mr. Keene issued a written disciplinary warning to Mr. Wilson that same day. [Filing No. 53-2, at ECF p. 8.]

Following this private meeting, Mr. Wilson ignored Ms. Hart.  [Filing No. 53-4, at ECF p. 24.]  On one occasion, Mr. Wilson told Ms. Hart that she looked nice.  [Filing No. 53-4, at ECF p. 26.]  After that, "he wouldn't talk to [her] anymore."  [Filing No. 53-4, at ECF p. 26.] He stopped training Ms. Hart, and stopped answering her questions.  [Filing No. 53-4, at ECF p. 23.]  Ms. Hart never complained to anyone at Forge again about Mr. Wilson.  [Filing No. 53-2, at ECF p. 6.]

Forge's No-Harassment Policy states that a supervisor will notify the Board of Directors within forty-eight hours after an employee has complained of workplace harassment.  [Filing No. 53-6, at ECF p. 3.]  After notification, the Board of Directors must conduct an investigation within seven days.  [Filing No. 53-6, at ECF p. 3.]  Where appropriate, disciplinary action is taken.  [Filing No. 53-6, at ECF p. 3.][2]

---

[2] Neither Forge nor Ms. Hart has presented any evidence indicating whether Mr. Keene, or anyone else at Forge, notified the Board of Directors regarding Ms. Hart's complaint.

#### 4.     *Ms. Hart's Termination and Forge's Decision Not To Rehire Her*

Citing Ms. Hart's failure to reinstate her license, Forge terminated Ms. Hart on October 13, 2011. [Filing No. 53-2, at ECF p. 20.] Specifically, the December 7, 2011 court date fell outside of Ms. Hart's 90-day window to have her driver's license reinstated, and Mr. Keene believed that Ms. Hart had not made a good faith effort to reinstate her license despite numerous opportunities to do so. [Filing No. 53-2, at ECF p. 4.] Mr. Keene also had learned from Ms. Hart that she did not have car insurance, and felt that Ms. Hart had not been "forthright" with him about the driver's license issue when they first discussed the Service Coordinator position. [Filing No. 53-2, at ECF p. 4.]

When Ms. Hart was terminated, Mr. Keene informed her that she may be eligible for rehire if she could have her license reinstated within thirty days. [Filing No. 53-4, at ECF p. 20.] On October 14, 2011, Ms. Hart paid her remaining fines. [Filing No. 53-7, at ECF pp. 3-4.] Ms. Hart informed Mr. Keene that her license had been reinstated, and Mr. Keene told Ms. Hart that he would have to "talk to corporate" about potentially rehiring her. [Filing No. 53-4, at ECF p. 20.] Although Ms. Hart still had not provided Mr. Keene with a copy of a valid driver's license, [Filing No. 53-2, at ECF p. 5], he spoke with Forge's Director of Human Resources, Mike Seiler, about rehiring her, [Filing No. 53-2, at ECF p. 5]. Mr. Seiler decided that Forge should not rehire Ms. Hart because: (1) she had not made diligent efforts to reinstate her license during her employment; and (2) Forge had not received any documents confirming that her license had been reinstated. [Filing No. 53-3, at ECF p. 3.] Mr. Keene agreed with Mr. Seiler's decision. [Filing No. 53-2, at ECF p. 5.] Ms. Hart never provided Forge with any official document showing that her driver's license had been reinstated. [Filing No. 53-2, at ECF p. 5.]

5.    *Ms. Hart's Lawsuit*

Ms. Hart filed a Charge of Discrimination with the Indiana Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC") on October 17, 2011, and received a right to sue letter from the EEOC in October 2012.  [Filing No. 10, at ECF p. 3.]   Ms. Hart filed her Amended Complaint in this Court on February 28, 2013.  [Filing No. 10.]  The Court denied Ms. Hart's Motion for Leave to File Second Amended Complaint on November 7, 2013.  [Filing No. 51.] This denial prohibited Ms. Hart from pursuing retaliation claims based on a disciplinary warning she received in September 2011 or on Forge's failure to investigate her sexual harassment complaints.  [Filing No. 51, at ECF p. 6.]  The Court deemed Ms. Hart's failure-to-rehire retaliation claim to be part of the pending Amended Complaint.  [Filing No. 51, at ECF p. 6.]

### III.
### DISCUSSION

### A.    Hostile Work Environment Claim

Forge argues that Ms. Hart's hostile work environment sexual harassment claim fails as a matter of law because: (1) her allegations do not rise to the requisite level of severe of pervasive harassment, [Filing No. 53, at ECF pp. 12-14]; and (2) there is no basis for liability against Forge because it was not negligent in discovering or remedying the harassment, [Filing No. 53, at ECF p. 14].  Ms. Hart responds that she believed she suffered harassment and Forge failed to exercise

reasonable care in handling her complaint. [Filing No. 60-1, at ECF pp. 5-7.][3]

"An actionable hostile environment claim requires the plaintiff to prove: (1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability." *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005); *see also Mason v. S. Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000). Forge does not dispute that the alleged harassment was based on Ms. Hart's membership in a protected class. [Filing No. 53, at ECF pp. 12-14.]

        *1.*    *Ms. Hart Has Not Shown That Her Work Environment Was Objectively Offensive or That The Conduct Was Severe or Pervasive*

Forge argues that Ms. Hart's work environment was not objectively hostile, and that the conduct Ms. Hart complains of was not severe or pervasive. [Filing No. 53, at ECF p. 12.] According to Forge, Ms. Hart's allegations fall short of actionable harassment, and her inaction in complaining sooner "belies the notion" that Mr. Wilson's comments were subjectively and objectively offensive. [Filing No. 53, at ECF p. 13.] It also argues that Mr. Wilson's comments did not involve physical conduct or threatening behavior. [Filing No. 53, at ECF p. 13.] In opposition, Ms. Hart argues that she "subjectively believed that she suffered harassment" and

---

[3] On November 7, 2011, the Magistrate Judge denied Ms. Hart's motion to file a Second Amended Complaint, barring Ms. Hart's retaliation claim based on Forge's failure to investigate her complaint properly. [Filing No. 51, at ECF p. 6.] Ms. Hart's current contention that Forge failed to exercise reasonable care in handling her complaint is different from the claim the Magistrate Judge disallowed – that Forge retaliated against her by failing to investigate her complaint properly. Her current contention is being used to establish an element of her hostile work environment claim – the employer liability element. [*See* Filing No. 60-1, at ECF pp. 5-7.] As such, it is not barred by the Magistrate Judge's November 7, 2011 Order Denying Plaintiff's Motion for Leave to File Second Amended Complaint. [Filing No. 51.]

that "any reasonable person would perceive the comments and text messages as based on sex." [Filing No. 60-1, at ECF p. 5.]

To determine whether an environment is subjectively and objectively offensive, the Court will consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014) (citation and quotation marks omitted). Both the plaintiff and a reasonable person must perceive the environment as hostile or abusive. *Starnes v. Barrett & McNagny, LLP*, 2005 WL 1175118, *2 (N.D. Ind. 2005) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). "[T]he workplace that is actionable is the one that is hellish." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004) (citations and quotation marks omitted). Occasional inappropriate comments do not rise to the level of an objectively hostile work environment. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 841 (7th Cir. 2009).

For conduct to be severe or pervasive, the harassment must "alter the conditions of the employee's environment and create a hostile or abusive working environment." *Mason*, 233 F.3d at 1043. For the purposes of a hostile work environment claim, the Seventh Circuit has time and again held that isolated remarks, even when unambiguously offensive in nature, are insufficient to create a hostile work environment under Title VII. *See Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 648–49 (7th Cir. 2011) (collecting cases and citing *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002) for the proposition that a "handful of offensive comments, most of which were by fellow employees over a year-and-a-half period, were not sufficient to raise a jury issue").

Ms. Hart's work environment was not objectively offensive because it was not hellish, and Mr. Wilson's conduct was not severe or pervasive. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995), is particularly instructive. There, a secretary alleged the following incidents, perpetrated by her manager: (1) he called her "pretty girl"; (2) he grunted at her in a sexual manner when she wore a skirt to work; (3) when she commented that his office was hot, he replied "not until you stepped your foot in here"; (4) when "may I have your attention please" was broadcast over the speaker, he said to her "[y]ou know what that means, don't you? All pretty girls run around naked"; (5) he called her a "tilly," and when she asked him what it meant, he said he used the term to refer to all women; (6) he told her that his wife told him he "better clean up [his] act" and "better think of [her] as Ms. Anita Hill"; (7) when she asked why he left an office party early, he replied that there were so many attractive women there that he "didn't want to lose control, so [he] thought [he'd] better leave"; (8) when she complained that his office was smoky from cigarette smoke, he replied "[o]h really? Were we dancing, like in a nightclub?"; and (9) when she asked him if he'd gotten his wife a Valentine's Day card, he replied that he had not but he should because he was lonely (his wife had not yet moved to live with him in Chicago) and all he had for company was his pillow; he then gestured with his hand to indicate masturbation. *Id.* at 430. The *Baskerville* court concluded that "no reasonable jury could find that [the manager's] remarks created a hostile working environment." *Id.* at 431.

Here, Ms. Hart has shown that Mr. Wilson said: (1) "you look nice"; (2) "your a** looks good today"; (3) "I want to f*** you"; and (4) "why do you have a tongue ring"; and that he texted: (1) "U a hot momma"; (2) "U look good today"; and (3) "why the tongue piercing." [Filing No. 53-4, at ECF p. 22; Filing No. 53-9.] These incidents do not come close to the level of severity in *Baskerville* or in numerous other cases in which the Seventh Circuit Court of

Appeals held that the offending conduct there did not even rise to the level of actionable sexual harassment under Title VII. *See, e.g.*, *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993) (alleged harasser asked plaintiff for dates, called her a "dumb blonde," put his hand on her shoulder several times, attempted to kiss her on multiple occasions, and placed "I love you" signs in her work area); *McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004) (alleged harasser touched the plaintiff's breasts on multiple occasions, asked her what color bra she was wearing, and asked if he could "make a house call" when she called in sick). Therefore, having failed to prove that the offending conduct was sufficiently severe or pervasive, Ms. Hart has failed to prove the elements of a *prima facie* case of sexual harassment.

2.    *Based on the Undisputed Evidence, Forge is Not Liable for Mr. Wilson's Conduct*

Forge also argues that there is no basis for finding liability on its part, asserting that Mr. Wilson was not a supervisor and Forge was not negligent in either discovering or remedying the harassment. [Filing No. 53, at ECF p. 14.] Ms. Hart contends that Forge did not exercise reasonable care in responding to her complaint. [Filing No. 60-1, at ECF p. 6.] According to Ms. Hart, Forge should have acted consistently with its No-Harassment Policy by reporting her complaint to the Board and conducting a formal investigation. [Filing No. 60-1, at ECF p. 7.]

Employers are vicariously liable for hostile work environment claims when the employee's own supervisors commit the harassment, or are directly liable when the employer was negligent in addressing the harassment. *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998). An employee must present evidence that the employer "failed to take reasonable steps to remedy the harassment once" it was on notice of the employee's complaint. *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir. 2004) (citing *Berry v. Delta Airlines, Inc.*,

260 F.3d 803, 811 (7th Cir. 2011)).  If the employer takes reasonable steps to discover and rectify the harassment, the employer has satisfied its legal duty.  *Baskerville*, 50 F.3d at 431–32.

Mr. Wilson, like Ms. Hart, was a Service Coordinator.  [Filing No. 53-2, at ECF p. 5.] Mr. Wilson was not Ms. Hart's supervisor and could not hire, fire, or discipline her or other employees.  [Filing No. 53-2, at ECF p. 5.]  Because Mr. Wilson was not a supervisor, Forge could only be liable if it was negligent in addressing Ms. Hart's complaint.

Forge's No-Harassment Policy states that, upon an employee complaint, a supervisor will notify the Board of Directors within forty-eight hours; the Board is to conduct an investigation within seven days; and disciplinary action must be taken if appropriate.  [Filing No. 53-6, at ECF p. 3.]  Ms. Hart has not presented any evidence indicating that Mr. Keene did not follow this procedure.  In any event, drawing all reasonable inferences in Ms. Hart's favor and assuming that Mr. Keene did not follow Forge's No-Harassment Policy (*i.e.*, did not report Ms. Hart's complaint to the Board of Directors), Ms. Hart has still failed to show that Forge did not take reasonable steps to address her complaint.  After Ms. Hart complained, Mr. Keene assured her that Mr. Wilson's comments were inappropriate.  [Filing No. 53-4, at ECF p. 25.]  Mr. Keene met with Ms. Hart and Mr. Wilson to resolve the dispute.  [Filing No. 53-4, at ECF pp. 25-26.] Mr. Keene verbally informed Mr. Wilson that his conduct was inappropriate, [Filing No. 53-2, at ECF p. 5], and issued a written disciplinary warning, [Filing No. 53-2, at ECF p. 8].  Ms. Hart never complained to Forge again about Mr. Wilson.  [Filing No. 53-2, at ECF p. 6.]  Because Forge took reasonable steps to investigate and rectify Ms. Hart's complaint, Forge discharged its legal duty and is not liable for Mr. Wilson's conduct.

Because Ms. Hart has not proven that Mr. Wilson's conduct was severe or pervasive or that Forge did not take reasonable steps to address that conduct, her hostile work environment claim fails as a matter of law and Forge is entitled to summary judgment on that claim.

**B.    Retaliation Claim**

Forge argues that Ms. Hart's retaliation claim fails as a matter of law because Ms. Hart cannot establish a *prima facie* case of retaliation under either the direct or indirect method. [Filing No. 53, at ECF pp. 14-15.]  Even if Ms. Hart could establish a *prima facie* case, Forge argues, Ms. Hart cannot demonstrate that Forge's stated reasons were pretext for retaliation. [Filing No. 53, at ECF p. 17.]  Ms. Hart contends that she can establish a *prima facie* case under both the direct and the indirect methods, [Filing No. 60-1, at ECF pp. 4-11], and that Forge's stated reason for termination was pretext for retaliation, [Filing No. 60-1, at ECF p. 9].

*1.    Ms. Hart Has Not Established a Retaliation Claim Under the Direct Method*

Forge argues that there is no direct evidence showing that Ms. Hart's complaint of inappropriate sexual conduct caused her to be terminated.  [Filing No. 53, at ECF p. 15.]  It argues that: (1) Ms. Hart's failure to obtain her license is a "superseding, intervening event that destroys any potential causal link between prior protected activity and her termination or failure to be rehired," and (2) Ms. Hart cannot rely solely on the timing of the termination decision to establish causation.  [Filing No. 53, at ECF pp. 15-16.]  Ms. Hart contends that a causal connection exists because "after[she] complains, [she] receives discipline."  [Filing No. 60-1, at ECF p. 5.]  Ms. Hart further supports her position by citing the EEOC's finding – that she suffered an adverse employment action.  [Filing No. 60-1, at ECF p. 5.]

An employee may use either the direct or indirect methods of proof to establish a *prima facie* case of retaliation under Title VII.  *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir.

2008).  The direct method requires evidence that the employee "(1) engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) there was a causal connection between the two."  *Northington v. H&M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013).  Neither Forge nor Ms. Hart disputes that Ms. Hart engaged in protected activity by reporting Mr. Wilson's conduct.  [Filing No. 53, at ECF p. 16; Filing No. 60-1, at ECF p. 4.]  Nor do the parties dispute that Ms. Hart's termination would be considered an adverse employment action.  [Filing No. 53, at ECF p. 16; Filing No. 60-1, at ECF pp. 9-10.]  Under the direct method, the only issue is whether a causal connection exists.

To establish a sufficient causal connection, an employee can present direct evidence of retaliation through an employer's admission of discriminatory animus, or "'construct[] a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker.'"  *Stephens v. Erickson*, 569 F.3d 779, 787 (7th Cir. 2009) (quoting *Phelan v. Cook County*, 463 F.3d 773, 779–80 (7th Cir. 2006)).  "Timing may be an important clue to causation, but does not eliminate the need to show causation…."  *Bermudez v. TRC Holdings*, 138 F.3d 1176, 1179 (7th Cir. 1998) (internal citations omitted).  "[A]bsent other evidence of retaliation, a temporal relation is insufficient evidence to survive summary judgment."  *Contreras v. Suncast Corp.*, 237 F.3d 756, 765 (7th Cir. 2001) (holding a plaintiff failed to establish a causal connection despite several-week time frame between plaintiff's EEOC charge and termination).

Ms. Hart has not established a causal link through either direct or circumstantial evidence.  Forge has not admitted to discriminating against Ms. Hart.  Rather, Forge has consistently stated that Ms. Hart was terminated because she failed to make good faith efforts in reinstating her license.  [*See, e.g.*, Filing No. 53-2, at ECF p. 4; Filing No. 53-3, at ECF p. 3;

Filing No. 53-4, at ECF p. 20.] Neither has Ms. Hart created a convincing mosaic of circumstantial evidence that would allow a jury to infer discrimination. The short time frame between Ms. Hart's complaint and her termination – a period of twenty-three days – may be a clue to causation, but absent other evidence, that short time frame is not enough to establish a causal connection. Because Ms. Hart has not established a causal connection, she has not established a retaliation claim under the direct method.

### 2. Ms. Hart Has Not Established a Retaliation Claim Under the Indirect Method

Forge argues that Ms. Hart cannot establish a retaliation claim under the indirect method because she was not meeting its work performance expectations since she was not qualified for the Service Coordinator position without a valid driver's license. [Filing No. 53, at ECF p. 16.] Ms. Hart opposes this argument, asserting that: (1) she was given ninety days to obtain her license; (2) she undertook the reinstatement process in good faith; (3) the process came at significant expense and effort for her; and (4) she was meeting Forge's performance expectations at the time of her termination. [Filing No. 60-1, at ECF p. 8.][4]

The indirect method of proof of discrimination under *McDonnell Douglas Corp. v. Greene*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), requires evidence that: "(1) [an employee] is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of her protected class were treated more favorably." *Goodwin v. Bd. of Trs. of Univ. of Ill.*, 442 F.3d

---

[4] Ms. Hart's contention that she was meeting Forge's work performance expectations is not supported by record evidence. For example, Ms. Hart claims she met "her performance expectations," [Filing No. 60-1, at ECF p. 2], citing to her Service Coordinator Introductory Period Evaluation, [Filing No. 60-5, at ECF p. 2]. But the Introductory Period Evaluation shows that Ms. Hart "need[ed] improvement" in several categories. [Filing No. 60-5, at ECF p. 2.]

611, 617 (7th Cir. 2006). As before, Forge does not dispute that Ms. Hart is a member of a protected class or that Ms. Hart's termination would be considered an adverse employment action. The only issues are whether Ms. Hart was meeting Forge's work performance expectations and whether a similarly situated employee was treated more favorably.

To determine whether Ms. Hart was performing her job satisfactorily, "[t]he proper inquiry mandates looking at [Ms. Hart's] job performance through the eyes of her supervisors at the time of her…termination." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). The undisputed evidence establishes that Ms. Hart was not meeting Forge's work performance expectations. Forge hired Ms. Hart on the condition that she obtain her driver's license within ninety days. [Filing No. 53-2, at ECF p. 3.] Mr. Keene assisted Ms. Hart in setting up a BMV login and profile so that she could begin the process of having her driver's license reinstated. [Filing No. 53-2, at ECF p. 3.] He also permitted Ms. Hart to leave work on three occasions to reinstate her license. [Filing No. 53-2, at ECF pp. 3-4; Filing No. 53-2, at ECF pp. 14-15.] Mr. Keene prepared a letter for Ms. Hart to present to the traffic court, explaining the license requirement for her job. [Filing No. 53-2, at ECF p. 4; Filing No. 53-4, at ECF p. 18.] Despite Mr. Keene's efforts and accommodations, Ms. Hart informed him on October 13, 2011, that she had not reinstated her license and that she needed to appear in court for a fourth time on December 7, 2011 – a date that fell outside of Ms. Hart's ninety-day window. [Filing No. 53-2, at ECF p. 4.] The Court finds that Ms. Hart was not meeting Forge's work performance expectations.

Ms. Hart also has not shown that a similarly situated employee outside of her protected class was treated more favorably. To meet this element, the Court asks "whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator

-19-

to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination or retaliation." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). Ms. Hart has not pointed to a would-be comparator to allow the Court to determine whether sufficient commonalities exist, let alone determine whether a jury could reach an inference of retaliation.

Because Ms. Hart was not meeting Forge's performance expectations, and because she has not identified a similarly situated employee, she has not established a *prima facie* case of retaliation via the indirect method.

        3.      *Ms. Hart Has Not Shown Forge's Stated Reasons Were Pretext For Retaliation*

Even if Ms. Hart could establish a *prima facie* case of retaliation under either the direct or indirect method, she has not presented evidence that would allow the trier of fact to conclude that Forge's reasons for terminating her were a pretext for retaliation. *Goodwin*, 442 F.3d at 617–18. Forge argues that Ms. Hart's "self-serving belief" that Forge's actions were retaliatory is not sufficient as a matter of law to establish pretext and that Ms. Hart cannot show that Forge's stated reason was false or dishonest. [Filing No. 53, at ECF p. 17.] Ms. Hart responds that Forge knowingly hired her without a license, that Forge gave her ninety days to reinstate her license, and that the "90 day window of opportunity evaporate[d]" after she complained about Mr. Wilson's conduct. [Filing No. 60-1, at ECF p. 9.]

In order to show that the employer's reasons were pretext, an employee must offer evidence to establish that the employer's reason is a "dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). "A plaintiff may accomplish this showing with evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the

discharge in question, or were insufficient to motivate the discharge." *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 289 (7th Cir. 1999) (quoting *Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 303 (7th Cir. 1996)). "[I]n determining whether an employer's proffered reason for an employment action was pretextual, we are not concerned with the correctness or desirability of reasons offered for employment decisions, but rather the issue of whether the employer honestly believes in the reasons it offers." *Grayson v. O'Neill*, 308 F.3d 808, 820 (7th Cir. 2002). "[W]hen the sincerity of an employer's asserted reasons for discharging an employee is cast into doubt, a factfinder may reasonably infer that unlawful discrimination was the true motivation." *Stalter*, 195 F.3d at 289.

Ms. Hart has not presented any evidence indicating that Forge's stated reasons for termination were pretextual. She failed to reinstate her license on numerous occasions, even though Forge advised her when she was hired that doing so was a condition of employment. [Filing No. 53-2, at ECF pp. 3-4.] When she was terminated, Mr. Keene told her that it was because she had not reinstated her driver's license. [Filing No. 53-4, at ECF p. 20.] Ms. Hart essentially argues that it was unfair for Forge to terminate her before the 90-day window in which to reinstate her driver's license had expired. But this argument fails. The Court is not "a super-personnel department that sits in judgment of the wisdom of an employer's employment decisions." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 975 (7th Cir. 2012) (quoting *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003)). Rather, the Court's task is to assess whether Ms. Hart's failure to have a valid driver's license was not the true basis for terminating her. As a factual matter, it is undisputed that Ms. Hart advised Forge she could not get her driver's license within the 90 period Forge had

provided her. The Court concludes that this was, in fact, the true basis for her termination, and her retaliation claim fails as a matter of law.

## C.     Failure-To-Rehire Retaliation Claim

Ms. Hart also asserts a retaliation claim based on Forge's decision not to rehire her after she was terminated. Forge argues that Ms. Hart has not shown that Forge's Director of Human Resources, Mr. Seiler, was aware of Ms. Hart's sexual harassment complaint when he made the decision to terminate her, which broke the causal link between the complaint and the termination. [Filing No. 64, at ECF p. 9.] Forge also argues that Ms. Hart cannot show pretext because she did not produce evidence that her license had been reinstated upon reapplication. [Filing No. 64, at ECF p. 9.] Ms. Hart asserts that she was qualified for the Service Coordinator position, and that her driver's license had been reinstated when she re-applied for the position after her termination. [Filing No. 60-1, at ECF pp. 11-12.] She argues that retaliation is the most likely motive for Forge's failure to rehire her – although she concedes that Forge's reasons for not re-interviewing her "are not known at this time." [Filing No. 60-1, at ECF pp. 11-12.]

Ms. Hart must meet the same standard for her failure-to-rehire retaliation claim that was required for her termination-related retaliation claim. Also most relevant to her failure-to-rehire

retaliation claim is the causal connection requirement.[5]  When an employer is not aware of the employee's protected activity (which the employee alleges caused the retaliation), the causal connection between the protected activity and the decision not to rehire is broken.  *See Maarouf v. Walker Mfg. Co.*, 210 F.3d 750, 755 (7th Cir. 2000) (absent knowledge on decisionmaker's part of protected activity, plaintiff lacks a causal link between the termination and the complaint of discrimination).

Ms. Hart's failure-to-rehire retaliation claim fails because she cannot establish a causal link.  Forge's Director of Human Resources, Mr. Seiler, decided not to rehire Ms. Hart.  [Filing No. 53-2, at ECF p. 5; Filing No. 53-3, at ECF p. 3.]  While Mr. Keene had updated Mr. Seiler regarding the status of Ms. Hart's driver's license and discussed with him whether Forge should rehire her, it was Mr. Seiler who made the decision not to do so.  [Filing No. 53-3, at ECF pp. 2-3.]  Ms. Hart has not presented any evidence indicating that Mr. Seiler was aware of Ms. Hart's complaint about Mr. Wilson at the time Mr. Seiler decided not to rehire Ms. Hart.  As a result, Forge is entitled to summary judgment on her failure-to-rehire retaliation claim.[6]

---

[5] Ms. Hart argues that in the failure-to-rehire context, a plaintiff must show that the "'(1) plaintiff applied for a particular job (2) which was vacant (3) for which plaintiff was qualified, and she must show that [she] was not hired for that position.'"  [Filing No. 60-1, at ECF p. 11 (quoting *Velez v. Janssen Ortho LLC*, 467 F.3d 802 (1st Cir. 2006)).]  In *Velez*, the court clarified that the First Circuit did not hold that a plaintiff need only establish that she applied for a position, that the position was vacant, and that she was qualified for the position to establish a failure-to-hire retaliation claim.  *Velez*, 467 F.3d at 807.  Rather, the First Circuit stated that a plaintiff may establish the adverse employment action prong of the direct method for a retaliation claim through the above test.  *Id.*  The First Circuit, like the Seventh Circuit, still required the plaintiff to show three elements under the direct method:  "(1) protected opposition activity, (2) an adverse employment action, and (3) a causal connection between the protected conduct and the adverse action."  *Id.* at 806.  As a result, Ms. Hart's inability to demonstrate a causal connection remains dispositive.

[6] Even if Ms. Hart could establish a *prima facie* failure-to-rehire retaliation claim, she has not presented enough evidence to show that Forge's stated reason for not rehiring her was pretext for

-23-

**D.      State Law and Punitive Damages Claims**

Forge argues that Ms. Hart's state law claims for negligent infliction of emotional distress, intentional infliction of distress, and negligent hiring, supervision, and retention fail as a matter of law for numerous reasons, and that punitive damages are not appropriate in this case because Forge has made good faith efforts to implement Title VII in the workplace.  [Filing No. 53, at ECF pp. 18-21.]  Ms. Hart did not respond to Forge's arguments, so has waived her claims.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument – as [Ms. Hart] has done here – results in waiver"); *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (affirming the district court's dismissal of three claims as waived because the party "failed to present evidence or argument in favor of them," and stating "[t]hey also failed to respond to the City's arguments against these claims in their reply to the City's motion to dismiss.  Because they did not provide the district court with any basis to decide their claims, and did not respond to the City's arguments, the claims are waived").  Accordingly, Forge is entitled to summary judgment on Ms. Hart's state law and punitive damages claims.

**IV.**
**CONCLUSION**

For the reasons explained, the Court **GRANTS** Forge's Motion for Summary Judgment.  [Filing No. 52.]  Judgment will issue accordingly.

---

retaliation.  Forge conditioned Ms. Hart's employment on reinstating her driver's license.  [Filing No. 53-2, at ECF p. 3.]  At the time of Ms. Hart's termination, she had not reinstated her license, and she had indicated that she would not be able to get it reinstated until December 7, 2011.  [Filing No. 53-2, at ECF p. 4.]  Ms. Hart did not provide Forge with any paperwork showing that her license had been reinstated.  [Filing No. 53-2, at ECF p. 5.]  Simply put, Ms. Hart has not presented any evidence to cast doubt on Forge's stated reason for termination.

**Distribution via ECF only to all counsel of record**